## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| PREFERRED REAL ESTATE INVESTMENTS, INC., RIVERTOWN DEVELOPERS, LP, and PREFERRED ASSET MANAGEMENT, LLC ) ) ) ) | Civil Action No. 06-1353 |
| Plaintiffs, ) ) | |
| v. ) ) | The Honorable John P. Fullam |
| MT. HAWLEY INSURANCE COMPANY ) ) | |
| Defendant. ) ) | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT MT. HAWLEY INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT

ZIMMER KUNZ, P.L.L.C

By:  Jeffrey A. Ramaley, Esq.
Attorney I.D. No. 41559
3300 USX Tower
Pittsburgh, PA 15219
412-281-8000 (telephone)
412-281-1765 (facsimile)

Attorneys for Defendant Mt. Hawley

Of Counsel:

William T. Corbett, Jr.
Jeffrey M. Beyer
DRINKER BIDDLE & REATH LLP
A Delaware Limited Liability Partnership
500 Campus Drive
Florham Park, New Jersey 07932-1047
973-360-1100 (telephone)
973-360-9831 (facsimile)

## PRELIMINARY STATEMENT

Defendant Mt. Hawley Insurance Company ("Mt. Hawley") respectfully submits this Memorandum of Law in Support of Mt. Hawley's Motion for Summary Judgment against Plaintiffs Preferred Real Estate Investments, Inc. ("PREI"), Rivertown Developers, LP ("Rivertown") and Preferred Asset Management, LLC ("PAM"). This case arises out of Plaintiffs' claim that they are entitled to insurance coverage for various claims asserted against Plaintiffs arising out of a July, 2003 accident at a construction project owned by Plaintiffs and several related entities. Plaintiffs have brought this declaratory judgment action, seeking, among other things, a declaration that Mt. Hawley was required to defend and indemnify Plaintiffs against the above-referenced claims pursuant to a Commercial General Liability insurance policy issued by Mt. Hawley to Plaintiffs for the effective period January 1, 2003 through September 30, 2003. In Count I of their Complaint, Plaintiffs seek a declaration that Mt. Hawley should have defended Plaintiffs against the claims arising from the accident, and that Plaintiffs are further entitled to indemnification from Mt. Hawley for the damages attributable to Plaintiffs as a result of the accident. In Count II, Plaintiffs charge Mt. Hawley with breaching its obligations under the insurance policy it issued to Plaintiffs. Finally, in Count III of the Complaint, Plaintiffs assert a claim for bad faith against Mt. Hawley pursuant to 42 Pa. Stat. Ann. § 8371.

As set forth below, however, Mt. Hawley is entitled to summary judgment on Counts I and II of the Complaint because Plaintiffs cannot possibly meet their burden of proving that Mt. Hawley was obligated to provide Plaintiffs with a defense against the claims under any policy of insurance. Even if Plaintiffs could prove that Mt. Hawley should have defended Plaintiffs against the claims arising from the accident, Mt. Hawley is still entitled to summary judgment that it has no duty to indemnify Plaintiffs for any damages attributable to Plaintiffs resulting from the accident, as Plaintiffs cannot show that any insurance policy issued by Mt. Hawley

affords coverage for such damages. Moreover, Mt. Hawley cannot meet its burden of showing that Mt. Hawley has acted in bad faith in this matter in any way; therefore, Mt. Hawley is entitled to summary judgment on Count III of the Complaint as well.

## STATEMENT OF FACTS

**A.     The Mt. Hawley Policy**

Mt. Hawley issued Policy No. MGL 0130945 to Plaintiffs for the effective period of January 1, 2003 to September 30, 2003 (the "Policy") (Affidavit of Ted McGrath in Support of Mt. Hawley's Motion for Summary Judgment, hereinafter "McGrath Aff.," ¶ 3, and Exhibit 1 thereto, Policy No. MGL 0130945).[1] The Policy provides, in pertinent part, as follows:

> **Section I – COVERAGES**
>
> **COVERAGE A BODILY INJURY…**
>
> * * * *
>
> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" . . . to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" . . . to which this insurance does not apply. . .
>
> The Policy further provides that the "insurance applies to 'bodily injury' . . . only if (1) [t]he 'bodily injury' . . . is caused by an 'occurrence' that takes place in the 'coverage territory'; and (2) [t]he 'bodily injury' . . . occurs during the policy period."

(Exhibit 1 to McGrath Aff., at MTH0750).

---

[1] PREI is listed as the named insured on the Policy Declarations, Rivertown appears as a named insured on the Named Insured and Location Supplementary Schedule, and PAM is listed as a named insured on Change Endorsement No. 4 to the Policy.

The Policy also contains a "Limitation of Coverage to Designated Premises or Project" endorsement (the "Designated Premises or Project Endorsement" or the "Endorsement"), which provides as follows:

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**SCHEDULE**

**Premises:**

    **See Schedule of Locations**

**Project:**

    **None covered**

\* \* \* \*

This insurance applies only to "bodily injury" . . . arising out of:

1.     The ownership, maintenance or use of the premises shown in the Schedule and operations necessary or incidental to those premises; or

2.     The project shown in the Schedule.

(Exhibit 1 to McGrath Aff., at MTH0770).

Included among the premises that are listed on the Policy's Schedule of Locations, which is referenced by the Designated Premises or Project Endorsement, is Location number 29, listed as:

Rivertown Developers LP
8 Highland aka One Seaport Dr.
Chester, PA

(Exhibit 1 to McGrath Aff., at MTH0748).

The Policy defines "bodily injury" to mean "bodily injury, sickness or disease sustained by a person . . . ." (Exhibit 1 to McGrath Aff., at MTH0759). "Suit" is defined to mean "a civil

proceeding in which damages because of 'bodily injury' . . . to which this insurance applies are alleged . . . ." (Exhibit 1 to McGrath Aff., at MTH0761).

The Policy contains an Each Occurrence Limit of $1 million. (Exhibit 1 to McGrath Aff., at MTH0744). In addition, the Policy contains an endorsement setting forth a $5,000 per claim deductible for claims involving bodily injury. (Exhibit 1 to McGrath Aff., at MTH0776).

**B.    The Accident, Mt. Hawley's Investigation, and Commencement
       of the Underlying Suit by Mr. McCormick Against Plaintiffs**

On September 24, 2003, Mt. Hawley received notification from Plaintiff PREI that there had been an alleged accident suffered by Mr. Gerard McCormick on July 28, 2003, at a property known as "The Wharf at Rivertown," with an address of 2501 Seaport Drive, Chester, Pa. 19013. (McGrath Aff. ¶ 4 and Exhibit 2 thereto, September 25, 2003 letter from Frank C. White to Rob Risnychok). According to his attorney, Mr. McCormick was an ironworker who had been employed by E&R Erectors and assigned to perform duties on a job site located at The Wharf at Rivertown. Mr. McCormick allegedly fell down a flight of stairs located in a stairwell tower, and suffered injuries from this fall, because the electrical lighting intended to illuminate the stairwell had failed. Mr. McCormick claimed that the accident was due to negligence on the part of PREI. (McGrath Aff. ¶ 5 and Exhibit 3 thereto, January 15, 2004 letter from Steven F. Marino to Michael O'Neill).

Having been informed of the alleged accident by PREI on September 24, 2003, Mt. Hawley's claim handler responded the following day and agreed that Mt. Hawley would investigate potential insurance coverage under a general and specific reservation of rights. (McGrath Aff. ¶ 6 and Exhibit 2). Mt. Hawley also noted that the Policy only covered specified locations, and that the location of the alleged accident reported by PREI – 2501 Seaport Drive, Chester, PA 19013 – did not appear to be a covered location. Mt. Hawley noted that the closest

location of a potentially covered premises appeared to be location #29 on the Schedule of Locations, with a listed address of "8 Highland aka One Seaport Dr., Chester, PA." Mt. Hawley specifically reserved its rights regarding the issue of whether the alleged accident location provided by PREI was, in fact, a location covered by the Policy. Mt. Hawley also requested any further information or supporting documentation regarding whether the accident location – 2501 Seaport Drive, Chester, PA 19013 – was the same as location #29 on the Policy Schedule of Locations, i.e., 8 Highland aka One Seaport Dr., Chester, PA. (Id.). Following this request, Mt. Hawley did not receive any such further information regarding the location of the alleged accident, other than two self-serving statements from Plaintiffs to the effect that the alleged address of the accident and location #29 on the Policy Schedule, were "one and the same." (McGrath Aff. ¶ 7).

On November 4, 2004, Mr. McCormick and his wife filed a personal injury lawsuit (the "Underlying Lawsuit") against PREI, as well as two contractors that were performing work on the site at which Mr. McCormick's alleged accident had occurred – A&E Construction ("A&E") and Phoenix Mechanical ("Phoenix"). The suit was forwarded to Mt. Hawley on November 24, 2004. (McGrath Aff. ¶ 8 and Exhibit 4 thereto, Complaint of Gerard and Kim McCormick). Of particular relevance is the fact that the complaint filed in the Underlying Lawsuit alleged the location of Mr. McCormick's accident to be "a historical property located at 2nd and Ward Street, Chester PA hereinafter referred to as the 'Wharf at Rivertown.'" (McGrath Aff. ¶ 9 and Exhibit 4, ¶ 8). The same day that it received notice of the Underlying Suit, Mt. Hawley confirmed to Plaintiff PREI that it was in receipt of the suit and would be defending PREI under a reservation of rights. (McGrath Aff. ¶ 10 and Exhibit 5 thereto, Communication from Frank White to Rob Risnychok). Mt. Hawley appointed defense counsel to defend PREI against the suit while its investigation continued. (Id.).

On February 8, 2005, the McCormicks filed a First Amended Complaint, which added several more parties as defendants to the Underlying Lawsuit. Following the amendment of the complaint, the defendants to the Underlying Lawsuit included numerous entities affiliated with or controlled by PREI, which entities collectively are referred to herein as the "Preferred Entities." These entities include: PREI; Rivertown; Rivertown Developers III, LP, Rivertown Developers IV, LP, Rivertown Developers V, LP, Rivertown Developers VI, LP, PAM; and Preferred Construction Advisors, LLC ("PCA"). The other defendants in the Underlying Lawsuit, following amendment of the McCormicks' complaint, were A&E and Phoenix. (McGrath Aff. ¶ 11 and Exhibit 6 thereto, First Amended Complaint of Gerard and Kim McCormick). The first amended complaint once again changed the location of the alleged accident site, this time, to "a historical property located [at] Delaware Avenue, Highland to Jeffrey Streets, Lots 1 through 8, in the City of Chester, Delaware County, PA [hereinafter referred to as the 'Wharf at Rivertown.'" (McGrath Aff. ¶ 12 and Exhibit 6, ¶ 15).

**C.      Withdrawal of Defense by Mt. Hawley**

On March 16, 2005, Mt. Hawley withdrew its defense of PREI arising out of Mr. McCormick's alleged accident and the Underlying Lawsuit.[2] (McGrath Aff. ¶ 13 and Exhibit 7 thereto, March 16, 2005 letter from Frank White to Rob Risnychok). Mt. Hawley noted that the coverage afforded by the Policy was limited by the Designated Premises or Project Endorsement only to listed projects, and that the Endorsement itself provided that no projects were covered. Mt. Hawley also pointed out that the Policy afforded coverage only to specified locations, and

---

[2]  As the First Amended Complaint added Rivertown and PAM as defendants to the Underlying Lawsuit and therefore for the first time implicated potential coverage for these entities under the Policy, Mt. Hawley's withdrawal of the defense of PREI also had the practical effect of denying any defense obligation to Rivertown or PAM.

that among the locations of loss that had been provided by the two complaints in the Underlying Lawsuit, as well as PREI itself, none of these locations comported with a location listed on the Policy. (McGrath Aff. ¶ 14 and Exhibit 7). Nor had Mt. Hawley been provided with any supporting documentation, or any other information, to indicate that the location listed as number 29 on the Policy's Schedule of Locations (8 Highland aka One Seaport Dr., Chester, PA) was, in fact, the location at which Mr. McCormick's alleged accident occurred – even though Mt. Hawley had requested any such information from PREI a year-and-a-half earlier, on September 25, 2003. As noted by Mt. Hawley in connection with its withdrawal of the defense, Mt. Hawley's investigation into the claim had revealed that, based on the locations of the alleged accident set forth in the two McCormick complaints, the closest alleged location to any address covered by the Policy was half a mile away. (McGrath Aff. ¶ 15 and Exhibit 7). Thus, in light of the fact that Mt. Hawley's investigation had revealed no information to indicate that Mr. McCormick's alleged accident had occurred at a covered location, and indeed had occurred at a construction project where the Policy specifically afforded no project coverage, Mt. Hawley withdrew its defense of PREI in connection with Mr. McCormick's accident and the Underlying Litigation.

**D.    The Preferred Entities' Litigations Seeking Insurance Coverage**

Plaintiffs commenced the instant action against Mt. Hawley on March 29, 2006, seeking, among other things, a declaration that Plaintiffs are entitled to insurance coverage from Mt Hawley under the Policy for the claims asserted by Mr. McCormick arising out of the alleged accident. (See Complaint). Mt. Hawley received service of the Complaint on June 16, 2006. In addition to the instant action, the Preferred Entities (including several non-parties to the instant action such as PCA, Rivertown II, Rivertown III, Rivertown IV, Rivertown V and Rivertown VI) commenced a separate action in Pennsylvania state court in September, 2006, seeking defense

and indemnification from the various contractors that entered into agreements with PCA to perform work at The Wharf at Rivertown, as well as the contractors' insurers. (McGrath Aff. ¶ 17 and Exhibit 8 thereto, Civil Complaint in matter of <u>Preferred Real Estate Investments, Inc. et al. v. Phoenix Mechanical, Inc.</u>).

The defendants in this companion action (the "Companion Action") include Phoenix (a contractor); Valley Forge Insurance Company (Phoenix's general liability insurer); Samuel Grossi & Sons (a contractor); American Alternative Insurance Company (Grossi's general liability insurer); A&E (a contractor); and Erie Insurance Group (A&E's general liability insurer). The Preferred Entities have asserted causes of action for breach of contract against all defendants in the Companion Action, and seek a declaratory judgment that each of the contractors and their general liability insurers must defend, indemnify, and hold harmless the Preferred Entities from the claims asserted by the McCormicks against the Preferred Entities. (McGrath Aff. ¶ 18 and Exhibit 8). Thus, not only do the Preferred Entities seek insurance coverage from Mt. Hawley in this action, but they are also pursuing three other contractors and their general liability insurers in the Companion Action for defense and indemnification arising out of Mr. McCormick's alleged accident.

**E.      Trial of the Underlying Litigation and Post-Judgment Assignment of the Plaintiffs' Claims Against Mt. Hawley in the Instant Litigation**

The Underlying Lawsuit proceeded to trial in November, 2006. Either prior to or during the trial of the Underlying Lawsuit, various entities that were named as defendants in the suit were dismissed, either voluntarily or pursuant to settlements with the McCormicks. (McGrath Aff. ¶ 19). By the time the matter was submitted to the jury, the special verdict form contained four (4) remaining defendants against whom liability arising out of the accident could potentially be assigned: the contractors Phoenix and A&E, as well as PCA, and Rivertown. (McGrath Aff.

¶ 20).   As to these four parties, the McCormicks presented evidence of potential negligence against PCA, Phoenix, and A&E, but <u>no</u> such evidence was presented against Rivertown.   As explained by Rivertown's counsel at the conclusion of the McCormicks' case:

> All of the evidence in this case so far has been directed to Preferred Construction Advisors . . . There is no evidence that the owner acted in any way.   PCA was the project manager, all of the evidence is about PCA, all of the expert testimony has to do with the role of PCA.   The only involvement . . . is Rivertown Developers, LP is just the owner and [sic] fee simple of the property itself or was at the time of the accident . . .

(McGrath Aff. ¶ 21 and Exhibit 9 thereto, Trial Transcript, November 9, 2006, 46:18-47:6).

The McCormicks' counsel contested Rivertown's motion for a nonsuit judgment, arguing that Rivertown, despite being merely the passive property owner, could still be held liable for the negligence of PCA, its construction manager at the work site.   Counsel did not dispute the complete lack of evidence presented against Rivertown, but argued – based on the construction management agreement between Rivertown and PCA – that PCA was the agent on behalf of the owner, Rivertown.   This evidence, the McCormicks' counsel told the trial court, was sufficient for McCormick to survive Rivertown's nonsuit motion, and to "establish vicarious liability with respect to Rivertown."   (McGrath Aff. ¶ 22 and Exhibit 9, Trial Transcript, November 9, 2006, 49:23-50:8).   The trial judge denied Rivertown's nonsuit motion – apparently based on the argument advanced by plaintiff's counsel that Rivertown could be vicariously liable for PCA's negligence, and therefore no direct evidence of negligence against Rivertown need be presented. (McGrath Aff. ¶ 23 and Exhibit 9, Trial Transcript, November 9, 2006, 56:10-18).

Later during the trial of the Underlying Lawsuit, as the parties discussed the jury charges and the verdict sheet, the judge debated how to handle the various Preferred Entities that remained in the case.   Counsel for McCormick suggested that the various Preferred Entities could be grouped together for purposes of the verdict sheet because "they are all liable, if at all,

by virtue of the conduct of Preferred Construction Advisors, LLC. Rivertown Developers LP would be on a vicarious basis." (McGrath Aff. ¶ 24 and Exhibit 10 thereto, Trial Transcript, November 9, 2006, 220:19-221:22). Thus, it was apparent that the only viable theory for potentially holding Rivertown liable was vicarious liability, based on the negligence of PCA. When it came time to instruct the jury on the law, however, the jury did not receive any instruction on vicarious liability generally, or on how it might be applied specifically to Rivertown with respect to the potential negligence of PCA. (McGrath Aff. ¶ 25 and Exhibit 11 thereto, Trial Transcript, November 13, 2006, 80:14-104:7; 109:4-111:7)

The jury found Phoenix Mechanical, PCA and Rivertown liable. Mr. McCormick was awarded a $2.5 million judgment, and his wife a $500,000 judgment. The jury specifically apportioned the percentage of fault to the various defendants in Question 7 on the special verdict slip, which reflects as follows:

Question 7

Taking the combined negligence that was a factual cause of any harm to the plaintiffs as 100%, what percentage of that causal negligence was attributable to each of the defendants:

| Phoenix Mechanical, Inc. | 30% |
|---|---|
| Preferred Construction Advisors, LLC, and Rivertown Developers, LP | 70% |
| A&E Construction, Inc. | 0% |

(McGrath Aff. ¶ 26 and Exhibit 12 thereto, Verdict Slip).

Following the conclusion of the trial, Rivertown and PCA made post-trial motions seeking judgment in their favor notwithstanding the verdict, or, in the alternative, a new trial, based on several theories, including *inter alia*, that the verdict was against the weight of the evidence, and that no evidence of negligence on the part of Rivertown had been presented.

Specifically, counsel for Rivertown and PCA noted that the record had demonstrated "an utter lack of evidence by which a jury could conclude that Rivertown owed a duty of care as to the plaintiffs" and plaintiffs had been unable to produce "any evidence that Rivertown had any involvement with the Wharf at Rivertown at the time of the accident." (McGrath Aff. ¶ 27 and Exhibit 13 thereto, Brief in Support of Preferred's Motion for Post-Trial Relief, at p. 9). During the pendency of the post-trial motions, however, the Preferred Entities negotiated a Settlement Agreement, Assignment of Claims and Release with the McCormicks. (McGrath Aff. ¶ 28 and Exhibit 14 thereto, Agreement between Preferred and McCormicks).

In the Settlement Agreement, the Preferred Entities agreed to withdraw the post-trial motions and to consent to the entry of judgment against Rivertown and Preferred, and also agreed to pay the McCormicks $100,000. (McGrath Aff. ¶ 29 and Exhibit 14). In addition, the Preferred Entities assigned all of their claims against Mt. Hawley in this litigation to the McCormicks. The McCormicks agreed to release the Preferred Entities and to not enforce the judgment directly against them; rather, the McCormicks agreed that their recovery on the judgment against PCA and Rivertown would be limited to the extent of the available insurance coverage and/or damages as determined in the instant litigation. Also of note, the Settlement Agreement by its terms allows the Preferred Entities to continue to prosecute the Companion Action against the other contractors and insurers, and the Companion Action is unaffected by the Settlement Agreement. (Id.). On July 26, 2007, the court in the Underlying Lawsuit entered judgment against Phoenix, Rivertown and PCA in the amount of $2,701,386.47 for Gerard McCormick ($2.5 million plus delay damages) and $540,277.29 for Kim McCormick ($500,000 plus delay damages) (McGrath Aff. ¶ 30 and Exhibit 15 thereto, Order Entering Judgment).

<u>**ARGUMENT**</u>

**I.      APPLICABLE STANDARDS**

**A.      Summary Judgment**

Summary judgment is appropriate if the pleadings and other evidence on the record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>Saldana v. Kmart Corp.</u>, 260 F.3d 228, 232 (3d Cir. 2001). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. <u>Id.</u> at 254. The court reviews "all evidence and makes all reasonable inferences from the evidence in the light most favorable to the non-movant." <u>Hamilton v. Independence Blue Cross</u>, No. Civ.A. 03-6444, 2005 WL 453097, at *1 (E.D. Pa. Feb. 25, 2005) (citing <u>Wicker v. Consol. Rail Corp.</u>, 142 F.3d 690, 696 (3d Cir. 1998)). The non-moving party may not avoid summary judgment based upon "mere allegations or denials but must set forth specific facts showing there is a genuine issue for trial." <u>Id.</u> (citing <u>Lujan v. Nat'l Wildlife Fed'n</u>, 497 U.S. 871, 888 (1990)). In other words, to survive summary judgment, the non-moving party must present more than a mere "scintilla" of evidence supporting its claims. <u>See</u> <u>Anderson</u>, 477 U.S. at 251.

**B.      Interpretation of Insurance Contracts Generally**

Under Pennsylvania law, the Court has the responsibility of interpreting insurance contracts. <u>CGU Ins. V. Tyson Assoc.</u>, 140 F.Supp.2d 415, 418 (E.D. Pa. 2001). It is particularly appropriate for an insurance policy to be interpreted by a court in a declaratory judgment action. <u>Erie Ins. Exchange v. Muff</u>, 851 A.2d 919, 925 (Pa. Super. 2004) (citation omitted). In interpreting a contract of insurance, although ambiguous provisions should be construed by the Court in favor of the insured and against the drafter of the contract, the insurer, a Court "should

read policy provisions to avoid ambiguities, if possible, and not torture the language to create them." CGU Ins., 140 F.Supp.2d at 418 (internal citations and quotations omitted).

### C. Duty to Defend

In evaluating an insurer's potential obligation to defend its insured, Pennsylvania courts have set forth the following standards:

> The insurer's obligation to defend is fixed solely by the allegations in the underlying complaint. It is not the actual details of the injury, but the nature of the claim which determines whether the insurer is required to defend. The duty to defend is limited to only those claims covered by the policy. The insurer is obligated to defend if the factual allegations of the complaint on its face comprehend an injury which is actually or potentially within the scope of the policy.
>
> Thus, the insurer owes a duty to defend if the complaint against the insured alleges facts which would bring the claim within the policy's coverage if they were true. It does not matter if in reality the facts are completely groundless, false, or fraudulent. It is the face of the complaint and not the truth of the facts alleged therein which determines whether there is a duty to defend.'

Old Guard Ins. Co. v. Sherman, 866 A.2d 412, 416 (Pa. Super. 2004) (internal citations and quotations omitted).

While an insurer is required to defend claims where the complaint on its face potentially places the injury within the scope of the policy, it is not required to defend a claim "when it is apparent from the face of the complaint that none of the injuries that are alleged falls within the coverage of the policy." Sphere Drake, P.L.C v. 101 Variety, Inc., 35 F.Supp.2d 421, 427 (E.D. Pa. 1999) (quoting Britamco Underwriters, Inc. v. O'Hagan, No. 94-1160, 1994 WL 477551, at *3 (E.D. Pa. Spe. 2, 1994), aff'd, 60 F.3d 814 (3d Cir. 1995)).

Furthermore it is the allegations of the complaint – and the complaint alone – that form the basis of the insurer's potential obligation to defend the insured in Pennsylvania. See I.C.D. Indus., Inc. v. Federal Ins. Co., 879 F.Supp. 480, 487 (E.D. Pa. 1995) ("It is apparent that under Pennsylvania law the allegations contained in the complaint are the sole points of reference for

determining whether a claim comes within the scope of the coverage under an insurance policy"); see also Aetna Casualty & Sur. Co. v. Roe, 650 A.2d 94, 98 (Pa. Super. 1994) (same). "Consequently, extrinsic evidence, such as discovery requests or questions asked by counsel at a deposition, need not be considered when determining whether a particular claim falls within the scope of the policy." I.C.D. Indus., 879 F.Supp. at 487.

### D.    Duty to Indemnify

The duty to indemnify is a distinct obligation that is separate and apart from the duty to defend.  Indeed, an insurer's duty to indemnify is more limited than its duty to defend.  While the duty to defend potentially arises based on the allegations in the complaint, the duty to indemnify "arises only when the insured is determined to be liable for damages within the coverage of the policy."  Sphere Drake, 35 F.Supp.2d at 427 (quoting Britamco Underwriters, Inc. v. Logue's Tavern, Inc., No. 95-2997, 1995 WL 710570, at *2 (E.D. Pa. Dec. 1, 1995); see also Unionamerica Ins. Co., Ltd. V. J.B. Johnson, 806 A.2d 431, 434 (Pa. Super. 2002) (the duty to indemnify arises only if, after trial on the third-party claim, "it is determined that the loss suffered is covered by the terms of the policy.")

The insured who is arguing it is entitled to be indemnified bears the burden to establish coverage under an insurance policy.  See Sphere Drake, 35 F.Supp.2d at 427.  On the other hand, the insurer bears the burden of showing that policy exclusions preclude coverage, and exclusions are strictly construed against the insurer.  Id.  Finally, even in a case where an insurer is found to have wrongfully breached its duty to defend its insured, the insurer is still entitled to contest coverage, and may only be held to indemnify the insured when the insured meets its burden of proving that the claim in fact is covered under the policy.  See, e.g., American States Ins. Co. v. State Auto Ins. Co., 721 A.2d 56, 64 (Pa. Super. 1998) (court finding that duty to indemnify requires inquiry into whether there was actual coverage for the underlying claim, and refusing to

order insurer that had breached duty to defend to indemnify insured for claim that was proven to fall outside policy coverage).

### E. Bad Faith

The standard for bad faith claims pursuant to 42 Pa. Stat. Ann. § 8371 was set forth in <u>Terletsky v. Prudential Property and Cas. Ins. Co.</u>, 649 A.2d 680 (Pa. Super. 1994). In <u>Terletsky</u>, the Pennsylvania Superior Court adopted a two-part test that insureds must meet: (1) that the insurer lacked a reasonable basis for denying benefits; and (2) that the insurer knew or recklessly disregarded this lack of reasonable basis. <u>Klinger v. State Farm Mut. Auto. Ins. Co.</u>, 115 F.3d 230, 233 (3d Cir. 1997) (citing <u>Terletsky</u>, 649 A.2d at 689-90). While the term "bad faith" is not defined by Section 8371, Pennsylvania courts have interpreted it as "any frivolous or unfounded refusal to pay proceeds of a policy." <u>Terletsky</u>, 649 A.2d at 688 (quoting <u>Black's Law Dictionary</u> 139 (6th ed. 1990)).

The insured bears a heavy burden, as it must satisfy both prongs of the <u>Terletsky</u> test by clear and convincing evidence. <u>Id.</u> The "clear and convincing" standard requires that the plaintiff show "that the evidence is so clear, direct, weighty and convincing as to enable a clear conviction, without hesitation, about whether or not the [insurer] acted in bad faith." <u>J.C. Penney Life Ins. Co. v. Pilosi</u>, 393 F.3d 356, 367 (3d Cir. 2004) (internal citation omitted). As a result, the insured's burden of opposing a summary judgment motion on a bad faith claim is "commensurately high" in light of the substantive evidentiary burden at trial. <u>See</u> <u>DeWalt v. Ohio Cas. Ins. Co.</u>, No. 05-740, 2007 WL 1101273, at *9 (E.D. Pa. April 10, 2007).

## II. MT. HAWLEY OWED NO DUTY TO DEFEND PLAINTIFFS IN THE UNDERLYING LAWSUIT

As set forth above, it is the allegations of the underlying complaint and the nature of the claim that defines the contours of an insurer's duty to defend. Reading both the original and the

first amended complaint filed by the McCormicks in the manner most favorably to Plaintiffs, it is clear that neither complaint alleges facts which would bring the McCormicks' claims within the Policy's coverage. Therefore, as there was no potential for coverage, Mt. Hawley was completely justified in withdrawing the defense of Plaintiffs in March, 2005, as Mt. Hawley did not have any duty to defend Plaintiffs. The insured is not required to defend a claim "when it is apparent from the face of the complaint that none of the injuries that are alleged falls within the coverage of the policy." Sphere Drake, P.L.C v. 101 Variety, Inc., 35 F.Supp.2d 421, 427 (E.D. Pa. 1999). Indeed, the Policy itself is clear that Mt. Hawley has "no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' . . . to which this insurance does not apply."

The Policy, by its Designated Premises or Project Endorsement, limits coverage only to Designated Premises or Designated Projects. There is no dispute that the Endorsement on its face states that no projects were covered. Thus, Plaintiffs were only arguably entitled to potential coverage – and therefore a defense from Mt. Hawley – to the extent the McCormicks alleged the accident arose out of the "ownership, maintenance or use" of a Designated Premises. As noted above, however, neither of the McCormicks' complaints, which under Pennsylvania law form the sole basis for evaluating Mt. Hawley's duty to defend, alleged that the accident arose out of an insured's ownership, maintenance or use of a location covered by the Policy.

Moreover, even though it was under no obligation to do so[3], Mt. Hawley requested from Plaintiffs any supporting documentation that would indicate that the alleged location of the accident set forth by the McCormicks in both the original and the first amended complaint was in

---

[3] See I.C.D. Indus., 879 F.Supp. at 487 (extrinsic evidence, such as discovery requests or questions asked by counsel at a deposition, "need not be considered when determining whether a particular claim falls within the scope of the policy.")

fact the Chester, Pennsylvania location listed as location #29 on the Policy (i.e., 8 Highland aka One Seaport Dr., Chester, PA). In the year-and-a-half that Mt. Hawley investigated the claim, Plaintiffs never provided any such evidence, other than self-serving assertions that the address listed on the Policy – 8 Highland aka One Seaport Dr. – is "one and the same" as the various addresses of the alleged accident that the McCormicks set forth in the Underlying Lawsuit. (McGrath Aff. ¶ 16). In fact, to this day, Plaintiffs still have never provided any evidence that 8 Highland aka One Seaport Drive, Chester, PA is the same address as the various addresses of the McCormick accident that were alleged in the Underlying Litigation, other than self-serving statements to this effect.

Based on the facts and law set forth above, it is clear that the claim tendered by Plaintiffs Mt. Hawley could not have potentially implicated any defense obligation of Mt. Hawley under the Policy. After investigating Plaintiffs' claim for coverage for a year and a half, and defending Plaintiffs for more than a year, Mt. Hawley's investigation revealed that it had no duty to defend Mt. Hawley. Therefore, Mt. Hawley was justified in withdrawing the defense in March, 2005. As such, Mt. Hawley is entitled to summary judgment, as well as a declaration from this Court that it had no duty to defend Plaintiffs against the McCormicks' claims in the Underlying Lawsuit. See I.C.D. Indus., 879 F.Supp. at 487 (because it was "undisputed that the initial complaint is devoid of any allegations" implicating insurer's policy, insured's request for coverage "necessarily fails.")

## III. EVEN IF MT. HAWLEY OWED A DUTY TO DEFEND PLAINTIFFS, IT NEVERTHELESS OWES NO DUTY TO INDEMNIFY THEM

Even if, assuming *arguendo,* Mt. Hawley had a duty to defend the Plaintiffs – which, as set forth above, it did not – Mt. Hawley still does not have any obligation to indemnify Plaintiffs for any damages arising out of the Underlying Litigation, for two reasons: (1) Plaintiffs cannot

meet their burden of proving that the claims arising out of the Underlying Litigation are covered under the Policy; and (2) Rivertown Developers, the only insured Preferred Entity to be found liable in the Underlying Litigation, was erroneously found negligent to the McCormicks, in contravention of the law.

### A. The Claims Arising Out of Mr. McCormick's Accident Are Not Covered by the Policy

Even where an insurer is found to have breached its duty to defend, the insured must still show that the claim in fact is covered under the policy in order to win indemnification from the insurer. See American States Ins. Co., 721 A.2d at 64. Indeed, the Policy provides that Mt. Hawley "will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" . . . **to which this insurance applies**." (emphasis added). Plaintiffs cannot meet their burden under Pennsylvania law to prove that their claim falls within the Policy's affirmative grant of coverage.

### 1. The Accident Did Not Arise Out of a Designated Premises or a Designated Project

As set forth above, the Mr. McCormick's accident falls outside of the scope of coverage afforded the Policy (and specifically, the coverage as afforded pursuant to the Designated Premises or Project Endorsement), and therefore Mt. Hawley owed no obligation to defend Plaintiffs in the Underlying Lawsuit. For the very same reasons, Mt. Hawley similarly owes Plaintiffs no duty of indemnification. The Endorsement provides in relevant part that there is only coverage for a bodily injury arising out of the "ownership, maintenance or use of the premises shown in the Schedule and operations necessary or incidental to those premises"; or arising out of a project shown in the Schedule. For the reasons set forth above, Mr. McCormick's accident fits neither of these criteria; consequently, Mt. Hawley owes Plaintiffs no duty of indemnity arising out of the accident.

**2. The Policy Does Not Cover Liability Arising Out of Construction Projects**

Aside from the Designated Premises or Project Endorsement, there is an even more fundamental reason why the insurance provided by the Policy does not apply to claims arising out of Mr. McCormick's accident – the Policy was not intended to cover, and did not cover, liability arising from accidents in the course of construction projects. Therefore, even to the extent Rivertown could show that coverage for its liability arising from Mr. McCormick's accident is not foreclosed by the Endorsement, Rivertown still cannot prove that its claim falls within the Policy's affirmative grant of coverage because the parties specifically contemplated and understood that the Policy conferred no coverage for the insured's construction projects.

Mt. Hawley made it very clear, and the underwriting documents in the record confirm, that while it would write CGL insurance for a potential insured's property ownership business or property management, it would not insure construction operations and projects risk. (McGrath Aff. ¶ 31). For example, in the course of underwriting 801 Market Street Associates LP (another Preferred Real Estate Investments entity), a Mt. Hawley underwriter wrote that he was not comfortable providing primary insurance for the general contractor and various subcontractors on a construction job run by the general contractor. This was "contrary to good insurance practices." Mt. Hawley preferred an approach where Mt. Hawley would insure the property owner, who would then be indemnified by the general contractor (presumably who would purchase its own insurance). (Id. and Exhibit 16 thereto).

In the case of the project being undertaken by Rivertown, the general contractor for the project was PCA. (McGrath Aff. ¶ 32 and Exhibit 17 thereto). Thus, while Mt. Hawley would write insurance for Rivertown, and perhaps associated entities engaged in property management,

the decision was made not to insure PCA or any contracting or construction operations. (McGrath Aff. ¶ 33 and Exhibit 18). When Mt. Hawley was requested to insure several Preferred Entities, it agreed to cover PREI (listed as an "operating company"); PAM (listed as a "building manager"); and Preferred Real Estate Advisors (listed as a "brokerage company"). But Mt. Hawley expressly declined to write coverage for Preferred Construction Advisors, Inc. (listed as a "construction management" company) and Preferred Construction Advisors, LLC (listed as a "project management" organization), with the broker noting that the underwriter "does not want construction ops." (Id. and Exhibit 18 thereto).

It was well understood by Rivertown that any construction operations being undertaken on property it owned were not covered by the Policy. Following the expiration of the Policy, the various Preferred Entities (including Rivertown) procured general liability coverage with another insurance carrier, Travelers. The Preferred Entities' broker touted the new coverage as superior to Mt. Hawley's expired Policy in that the old Policy "excluded your Construction Operations and Preferred Construction Advisors as a Named Insured." On the other hand, the new Travelers policy now included coverage for construction operations. (McGrath Aff. ¶ 34 and Exhibit 19 thereto).

Mt. Hawley's precise intention not to cover construction operations is reflected in the Designated Premises or Projects Endorsement. That Endorsement provides that the coverage of the Policy applies only to injury arising out of either the ownership, maintenance or use of certain identified properties, and operations necessary or incidental to such properties, or specifically identified projects. In other words, coverage extended to the ordinary and customary risks of property ownership and to those extraordinary project risks that had been disclosed, considered and accepted by the underwriter. The accident that resulted in Mr. McCormick's injuries fit neither category of covered risk. That accident allegedly occurred in the course of a

major renovation project, which was to convert a historic electrical generation plant into an office complex. Such is not within the realm of ordinary risks inherent in the "ownership, maintenance or use" of property. Nor is such a major renovation and change of use an "operation necessary or incidental" to such ownership. See On Air Entertainment Corp. v. National Indemnity Co., 210 F.3d 146, 151 (3d Cir. 2000) (noting that policies containing such language "should not be confused with more comprehensive general liability policies" and stating that such policy language "requires a causal connection between the injury and the ownership, maintenance or use of the premises.") Of course, the extraordinary risk which led to Mr. McCormick's accident arose from the renovation project, and the Policy emphatically states that as to projects, there are "none covered."

Thus, Rivertown seeks coverage for an accident that occurred in the course of construction operations at a renovation project, when it knows full well that construction operations and projects were not an insured risk under the Policy. This is yet another reason why Rivertown cannot meet its burden to prove that its claim falls within the Policy's affirmative grant of coverage.

**B.    There Was No Legal Basis For Liability on the Part of Rivertown; Thus Mt. Hawley Cannot Owe It Any Indemnification Obligation**

Because a duty to indemnify arises "only when the insured is determined to be liable for damages within the coverage of the policy," Sphere Drake, 35 F.Supp.2d at 427, conversely, where the insured is not liable for the underlying conduct leading to the third party's damages, then the insured is not entitled to indemnification from its insurer. Here, the finding of Rivertown's liability in the Underlying Lawsuit for Mr. McCormick's accident was founded on a serious, reversible error by the trial court. Because there was no sound basis for Rivertown's

liability in the Underlying Lawsuit, Mt. Hawley therefore cannot be made to indemnify Rivertown.

As noted above, *no evidence whatsoever* was presented in the Underlying Lawsuit regarding negligence or breach of any other duty on the part of Rivertown. Counsel for the McCormicks conceded as much, but argued that Rivertown could still be kept in the case base on its potential to be held vicariously liable. (McGrath Aff. ¶ 22). The trial judge apparently agreed and, viewing the evidence in the light most favorable to the McCormicks, ruled that the case against Rivertown could proceed to the jury. (McGrath Aff. ¶ 23). However, the court made a critical, reversible error at the close of the evidence by failing to give the jury *any* instruction on vicarious liability – either on the doctrine generally, or on how it might be applied specifically to Rivertown with respect to potential negligence by PCA. (McGrath Aff. ¶ 25). This, compounded with Rivertown's inclusion on the same line of the verdict sheet as PCA, led to the unjust and inequitable result of Rivertown being found jointly and severally liable for 70 percent of the total verdict even though the jury had not been instructed on *any* legal theory on which Rivertown's liability could possibly have been based. The trial judge, by failing to present the jury with any legal basis whatsoever on which to find Rivertown liable, committed serious and reversible error.

Courts have found that adequate jury instructions are those "which fairly and reasonably present the issues and which provide correct principles of law for the jury to apply to those issues. In making charges to a jury, a trial judge . . . must give instructions which properly reflect the law applicable in light of the facts of the particular case." <u>Payne v. Tonti Realty Corp.</u>, 888 So.2d 1090, 1096 (La.App. 2004). In the Underlying Lawsuit, the judge provided no principle of law whatsoever under which Rivertown could be found liable for the accident. <u>Compare</u> <u>Dabasse v. Reyes</u>, No. 2D06-1409, 2007 WL 2213316, at *2 (Fla. App. 2 Dist. Aug. 3,

2007) (although the verdict form did not specifically state defendant was found liable on theory of vicarious liability, it is clear the jury's verdict was based on vicarious liability since the jury "was given a vicarious liability instruction, and there was no objection made to that instruction.")

As it was plainly based on a manifest error of law, the judgment against Mt. Hawley clearly should have and would have been overturned post-trial; indeed, Rivertown's post-trial motion specifically requested that the verdict against it be vacated.  However, in July 2007, in connection with the Settlement Agreement entered into with the McCormicks, Rivertown withdrew its pending post-trial motion, and therefore the trial court was deprived of the opportunity to overturn the legally erroneous verdict against Rivertown.  Thus, the finding in the Underlying Lawsuit of Rivertown's liability to Mr. McCormick, as well as Rivertown's withdrawal of its meritorious post-trial motion that would have resulted in the trial court overturned this finding, presents a serious miscarriage of justice, and cannot be permitted to stand.  And, in the absence of any underlying liability on the part of the insured, there is nothing for the insurer to indemnify.

For the reasons set forth above, Mt. Hawley is entitled to summary judgment, as well as a declaration from this Court that it has no duty to indemnify the Plaintiffs for any damages payable to the McCormicks arising out of the Underlying Lawsuit.

## IV.    PLAINTIFFS CANNOT PREVAIL ON THEIR BAD FAITH CLAIM AGAINST MT. HAWLEY

As noted above, an insured, to succeed on a bad faith claim against its insurer pursuant to Section 8371, must satisfy both prongs of a two-part test, providing clear and convincing evidence as to each part.  First, the insured must show that the insurer lacked a reasonable basis for denying benefits; and second, the insurer must be shown to have knowingly or recklessly disregarded its lack of any reasonable basis.  See Terletsky, 649 A.2d 680 (Pa. Super. 1994).

Bad faith behavior may include an insurer's "frivolous or unfounded refusal to pay proceeds of a policy." Id. at 688. As set forth above, it is beyond doubt that Mt. Hawley's withdrawal of the defense of Plaintiffs, and its position that it has no obligation to indemnify Plaintiffs, were neither frivolous nor unfounded. With Plaintiffs having failed to meet their burden to show why the claims asserted by McCormick were not within the Policy's affirmative grant of coverage, Mt. Hawley had an eminently reasonable basis for withdrawing the defense. As such, Mt. Hawley simply cannot be found to have dealt with Plaintiffs in bad faith.

Plaintiffs cannot possibly meet their burden to show that Mt. Hawley acted in bad faith in any way, let alone by "clear and convincing evidence." As noted above, clear and convincing evidence means that the evidence must be "so clear, direct weight and convincing as to enable a clear conviction, without hesitation," that the insurer acted in bad faith. J.C. Penney, 393 F.3d at 367. Given that Mt. Hawley did in fact, have a reasonable basis for withdrawing defense, Plaintiffs cannot meet their substantial burden on the bad faith claim. Moreover, a review of the case law examining bad faith claims in Pennsylvania reveals that the preferred method for proving such claims is to present expert witness testimony regarding whether the insurer's conduct in denying coverage is a clear violation of acceptable claims handling standards. See, e.g., Rutowski v. Allstate Ins. Co., 2004 WL 3155146 (Pa. Com. Pl. Nov. 10, 2004), at *33-34 (discussing how expert in claims handling testified "convincingly" that insurer had violated claims handling standards and constituted bad faith conduct"); Pennsylvania National Mut. Cas. Ins. Co. v. Johnson, 2007 WL 2259079 (Pa. Com. Pl. Jan. 16, 2007) (court accepting opinion of plaintiff's expert that insurer's behavior in denying claim "was in derogation of the standards and practices of insurance companies and that it constituted bad faith.") Here, while Mt. Hawley has requested that Plaintiffs identify any experts and produce any expert reports it intends to rely on at trial, no such experts or reports have been identified to Mt. Hawley. In the event that Plaintiffs

do not call an expert witness to testify in support of its bad faith claim, it is not clear how Plaintiffs could even begin to meet their burden to show that Mt. Hawley has dealt with Plaintiffs in bad faith.

Accordingly, for the reasons set forth herein, Mt. Hawley is entitled to summary judgment on Count III of the Complaint, as well as a declaration from this Court that it has not in any way acted in bad faith to Plaintiffs.

## CONCLUSION

Based on the foregoing, Travelers respectfully requests that this Court: (1) grant Mt. Hawley's Motion and enter summary judgment in Mt. Hawley's favor; (2) dismiss Plaintiffs' Complaint with prejudice, and (3) enter an order declaring that Mt. Hawley (a) had no duty to defend Planitiffs; (b) has no duty to indemnify Plaintiffs; and (c) did not act in bad faith toward Plaintiffs.

Dated:  October 22, 2007                          ZIMMER KUNZ, P.L.L.C

                                         By:      /s/ Jeffrey A. Ramaley

                                                  Jeffrey A. Ramaley, Esq.
                                                  Attorney I.D. No. 41559
                                                  3300 USX Tower
                                                  Pittsburgh, PA 15219
                                                  412-281-8000 (telephone)
                                                  412-281-1765 (facsimile)

                                                  Attorneys for Defendant Mt. Hawley

Of Counsel:

William T. Corbett, Jr.
Jeffrey M. Beyer
DRINKER BIDDLE & REATH LLP
A Delaware Limited Liability Partnership
500 Campus Drive
Florham Park, New Jersey 07932-1047
973-360-1100 (telephone)
973-360-9831 (facsimile)

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that the within Memorandum was served on counsel below via U.S. Mail:

David J. Caputo, Esquire
Kline & Specter, P.C.
The Nineteenth Floor
1525 Locust Street
Philadelphia, PA 19102

Dated: October 22, 2007 ZIMMER KUNZ, P.L.L.C

By: <u>/s/ Jeffrey A. Ramaley</u>

Jeffrey A. Ramaley, Esq.
Attorney I.D. No. 41559
3300 USX Tower
Pittsburgh, PA 15219
412-281-8000 (telephone)
412-281-1765 (facsimile)